ANNIS VAN NUYS SCHWEPPE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6415.   Promulgated June 19, 1947.

*Sidney H. Wall, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: As we have stated above, the sole issue herein is whether certain distributions made by the building company in the years 1940 and 1941 constituted "dividends" within the meaning of section 115 (a) of the Internal Revenue Code.

Petitioner contends that Susanna H. Van Nuys during her lifetime and while she was a shareholder of the building company forgave the indebtedness of the building company as to the principal of the $400,000 note; that this foregiveness of corporate indebtedness by a shareholder constituted a contribution to the capital of the building company; that capital so contributed does not constitute "earnings and profits" of the building company; and that distributions out of such contributed capital to petitioner as a shareholder of the building company are not taxable dividends within the meaning of section 115 (a) of the code, but should be applied against and reduce the adjusted basis of the stock of the building company held by petitioner in accordance with section 115 (d). The applicable portions of the Internal Revenue Code are set out in the margin.[1]

Respondent concedes that if petitioner's premise, that Susanna H. Van Nuys in her lifetime foregave the indebtedness of $400,000 to the building company and made a contribution of that amount to its capital surplus, were sound, then such $400,000 would not constitute a fund from which taxable dividends could be paid. Respondent contends, however, that such was not the case, but that the way the building company secured freedom from the payment of the note was to plead the statute of limitations in a suit brought by the executor of Susanna H. Van Nuys after her death, and that the building company's success in having this plea sustained by the court at a time when the corporation was thoroughly solvent resulted in increasing its earnings and profits by the sum of $400,000.

Respondent therefore contends that the entire distribution of $35,-246.38 and $24,149.16 paid to petitioner during the years 1940 and

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

* * * * * * *

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. This subsection shall not apply to a distribution in partial or complete liquidation or to a distribution which, under subsection (f) (1), is not treated as a dividend, whether or not otherwise a dividend.

1941, respectively, by the building company was paid out of "earnings and profits accumulated after February 28, 1913," and constitutes taxable dividends within the meaning of section 115 (a), *supra.*

The courts and the Treasury regulations[2] have long recognized that a gratuitous forgiveness by a stockholder of a debt of his corporation may amount to a capital contribution. See *Carroll-McCreary Co.* v. *Commissioner*, 124 Fed. (2d) 303; *American Cigar Co.* v. *Commissioner*, 66 Fed. (2d) 425; *Commissioner* v. *Auto Strop Safety Razor Co.*, 74 Fed. (2d) 226. Respondent maintains that the facts herein do not permit application of the above doctrine.

The problem here is largely one of fact. The question turns upon whether Susanna H. Van Nuys, a stockholder of the building company, forgave the indebtedness of the building company as to the principal of the $400,000 note so as to amount to a capital contribution.

We agree with respondent's contention that the evidence herein does not establish that Susanna H. Van Nuys forgave the indebtedness of the building company as to the note herein so as to amount to a capital contribution. The evidence shows that during the lifetime of Susanna H. Van Nuys the building company continued to pay her interest on the note and carried the note on its books as an obligation which it owed her. It may have been the intent of Susanna H. Van Nuys never to collect the principal of the note, as she indicated at various times in conversations with members of her family, but this falls short of the proof required to establish that payment thereof was forgiven, so as to amount to a capital contribution. No action was taken by either Susanna H. Van Nuys or the corporation to indicate that the debt had been forgiven. There was no record made, no resolution adopted, and no other action taken consistent with the thought that the indebtedness was forgiven. As we have already said, the note was carried on the books of the building company as a liability during her lifetime and she continued to receive payment of the interest. The very fact that interest was paid by the corporation each year on the note to Mrs. Van Nuys and that the corporation continued to carry it upon its books under bills payable shows that she had not in fact forgiven the indebtedness and had not made a capital contribution of it to the corporation. We think it is also significant that in February 1919, when she gave to her three children, including the petitioner, all of the stock of the building company owned by her,

---

[2] Sec. 19.22 (a)–14 [Regulations 103]. *Cancellation of indebtedness.—(a) In general.—*The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See section 19.22 (a)–18.) In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt.

except one share, nothing was done to show that the payment of the note was to be forgiven so as to vest in the children complete ownership of the building company freed from the obligation of the debt. Moreover, when the executor of the estate of Susanna H. Van Nuys brought an action on the note in the California court and the building company pleaded only the statute of limitations as a defense, we think it indicated that the parties believed in the existence of the debt. There was no claim in that suit that Mrs. Van Nuys had forgiven the indebtedness to the building company during her lifetime.

Petitioner relies upon *American Cigar Co.* v. *Commissioner, supra*, in support of her contention that a contribution to the capital of a corporation may be made by one of its shareholders by means of a loan to the corporation which the shareholder does not expect or intend to collect, even though the shareholder holds promissory notes of the corporation evidencing the debt which have never been surrendered or canceled in any way. The instant case is distinguishable on its facts from that case. In the *American Cigar Co.* case the taxpayer held bonds and stock of another corporation which was in a poor financial condition and was unable to pay interest on its bonds. The taxpayer was reluctant to allow the debtor corporation to go into receivership and advanced money to enable it to meet its operating expenses and pay interest on its bonds. The taxpayer made the advances firmly believing that the obligations were worthless and uncollectible and were advanced in the belief they would never be repaid. The Second Circuit held that such advances made in the belief that they would not be repaid were in the nature of gifts and contributions to the capital of the debtor corporation. The building company herein was solvent during the entire period and there is no evidence whatever that the loan was made in the belief that the amount would not be repaid.

Having found that Susanna H. Van Nuys did not make a contribution to the capital of the building company, was the $400,000 "earnings and profits" within the meaning of section 115 (a) of the code? We think it was. In fact, we do not understand that petitioner contends to the contrary if we fail to sustain her contention that Susanna H. Van Nuys forgave the note to the corporation in her lifetime. When the corporation was relieved of the debt of $400,000, its free assets were correspondingly increased. This enhancement was due to the judgment of the California court in the suit on the note brought by the executor of the estate of Susanna H. Van Nuys, wherein the court upheld the contention of the building company that the statute of limitations in effect in California was a bar. It was not until the judgment of the California court that the right of the noteholder was finally determined, because the only defense to the payment of the

note was the plea of the bar of the statute of limitations, which must be affirmatively pleaded and could have been waived. Since the note was barred by the statute of limitations, it was not a gratuitous cancellation so as to amount to a gift within the rationale of *Helvering* v. *American Dental Co.*, 318 U. S. 322. By virtue of the judgment of the California court, the amount of $400,000 was released to the general uses of the building company and its assets, previously offset by the obligation of the note, were made available to the building company. This benefit, we think, is "earnings and profits" within the meaning of section 115 (a). Cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, 291 U. S. 426; *Walker* v. *Commissioner*, 88 Fed. (2d) 170; certiorari denied, 302 U. S. 692; *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393; petition for review dismissed, 67 Fed. (2d) 985; *Lutz & Schramm Co.*, 1 T. C. 682; *R. O'Dell & Sons Co.*, 8 T. C. 1165.

Petitioner argues that it was not the date of the judgment of the Superior Court of California to the effect that the note was barred by the statute of limitations that is the determinative date. Petitioner argues that, inasmuch as the note was barred on March 1, 1920, it was unenforceable from that date. Therefore, contends petitioner, March 1, 1920, is the pivotal date even if respondent's view be accepted. We do not see where that makes any difference. If March 1, 1920, be accepted as the date when the note became unenforceable and petitioner's assets became freed from its payment to the extent of $400,000, the result is the same so far as we can see.

We hold, therefore, that the distributions herein made to petitioner were dividends within the meaning of section 115 (a) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*