MENDHAM CORPORATION, A CORPORATION OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6007. Promulgated September 10, 1947.

*Emanuel Wagner, Esq.*, for the petitioner.
*Albert Monacelli, Esq.*, for the respondent.

322

OPINION.

OPPER, *Judge*: Superficially it might appear that the present proceeding, involving an issue similar to the one presented by *R. O'Dell & Sons Co.*, 8 T. C. 1165, is distinguishable from that case because of this petitioner's freedom from liability on the mortgage debt. The *O'Dell* case, however, was decided on the authority of *Lutz & Schramm Co.*, 1 T. C. 682, which deals with the question, not from the standpoint of the elimination of an indebtedness, cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, but as gain upon the final disposition of property.

Here, as in *R. O'Dell & Sons Co.*, *supra*, petitioner's property was sold in foreclosure and as a result a mortgage indebtedness greater than petitioner's basis was eliminated under the New Jersey law. In several respects the difficulties here are fewer. Expiration of the limitation on any proceeding to collect the debt occurred here in the same year as the sale; and, in addition, the debt was discharged by affirmative agreement of the parties and not merely barred by operation of law. Although the record in the *O'Dell* case was not definitive, it was assumed there, for failure of proof to the contrary, that the taxpayer had, as in *Lutz & Schramm*, *supra*, itself placed the mortgage on the property and received its proceeds to do with as it pleased, free from restriction. The resulting indebtedness prevented the original borrowing from creating gain, but the transaction was completed when the mortgage was discharged in exchange for a conveyance of the property, the final disposition of which thus established as taxable income the difference between the basis for the property and the amount acquired from the earlier borrowing. Unlike *Charles L. Nutter*, 7 T. C. 480, which presented only a situation "akin to a reduction of sale price," *O'Dell* and *Lutz & Schramm* involved not purchase money mortgages, but subsequent borrowings resulting in an ultimate cash benefit to the mortgagor upon completion of the whole operation. Cf. 4 The Tax Barometer, ¶331 (June 14, 1947).

Whether this proceeding presents a comparable situation depends upon the effect of the circumstance that it was not petitioner, but its transferor in a nontaxable exchange, which made the original borrow-

ing, and hence the opening move toward that final profit. Had the sale to petitioner been an ordinary one, the gain to its predecessor, including the receipt from the mortgage loan, would have been computed at the time, and the necessity of considering its effect upon petitioner would not have arisen. But, because the whole operation was within the corporate family, no tax consequence attached and petitioner took the property accompanied by its transferor's basis. Sec. 113 (a) (8). Nevertheless, it is petitioner's disposition of the property, and its elimination of the mortgage debt, which concludes the operation instituted by its predecessor and furnishes the occasion for a survey of the results of the entire transaction. Unless the transferee's situation be thought of as including the consequences of the original borrowing, that phase of the calculation will never be taken into account, and this omission will be the direct consequence of the tax-postponing provisions of section 112. Since the underlying philosophy of the statutory treatment of basis after tax-free exchanges is to preserve the continuity of dealings in property [1] for the very purpose of avoiding such a result, H. Rept. 179 (68th Cong., 1st sess.), pp. 16–17, we think it would be inconsistent with those provisions to disregard the ultimate profit from the entire operation in fixing petitioner's gain on the sale.

This view is supported by various considerations. It is only the reduction of basis for depreciation deductions previously allowed which leads to the attribution to petitioner of any profit on the sale. This, as we pointed out in *R. O'Dell & Sons Co.*, *supra*, is necessary to a proper consideration of the gain in such a case as this, under the principle of *Crane* v. *Commissioner*, 331 U. S. 1. But the depreciation was essentially that deducted by and beneficial to the predecessor. Had not petitioner, as compelled by section 113, debited itself with its transferor's accumulated depreciation, there would have been no excess of proceeds over basis on any theory.[2] Hence, to sustain petitioner by eliminating the gain to the combined owners resulting from the original borrowing would have the same effect as disregarding the predecessor's depreciation—an action expressly condemned by section 113.

Furthermore, although the occasion for its application is different, this situation seems to fall solidly within the doctrine of such cases

---

[1] "* * * the exchange and basis provisions have two important results: (a) to postpone the determination and recognition of gain or loss, in the cases of the designated exchanges, from the time the exchange is made, until the time when the securities or property are disposed of; and (b) to impose upon the transferee a possible tax upon any appreciation which may have accrued in the hands of the transferor, prior to the transfer." Magill, Taxable Income (Rev. Ed.), 168–169.

[2] Amount received from mortgage _____ $325,000.00

Original cost of property_____ $369,735.42
Petitioner's depreciation_____ 37,780.09
———————— 331,955.33

as *Commissioner* v. *Sansome* (C. C. A., 2d Cir.), 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667; and *Commissioner* v. *Munter*, 331 U. S. 210. We may say here in paraphrase of the former case: "A corporate reorganization which results in no gain or loss" under section 112 "does not toll" the property's "life as [a] continued venture." It seems to us to follow that petitioner must be treated here exactly as though it had itself placed the mortgage on the property and benefited by the cash so acquired.[3] Thus regarded, petitioner's situation is not to be distinguished from that dealt with in *Lutz & Schramm Co.*, *supra*, and *R. O'Dell & Sons Co.*, *supra*, and the result here must be the same.

What we have said, however, applies only to so much of petitioner's gain as arises from the computation of sale price and adjusted basis. Cf. *Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523. To the extent that the deficiency includes interest and taxes which petitioner was never required to pay, respondent's determination must be disapproved on the principle of *Helvering* v. *American Dental Co.*, 318 U. S. 322.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARUNDELL, VAN FOSSAN, TYSON, HILL, DISNEY, and HARRON, *JJ.*, dissent.

---

[3] As appears in our findings, petitioner's transferor concluded the original borrowing with $148,926.80 "cash in bank."