## WOODSAM ASSOCIATES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24584.   Promulgated March 28, 1951.

*Jacob Rabkin, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* Petitioner or its transferor placed various mortgages on the property in the years 1922 to 1931. Petitioner acquired the property in a tax free exchange. In 1943 the mortgage liability was $381,000. The mortgagee then foreclosed the mortgage and bought the property at the foreclosure sale for a nominal sum. The original cost of the property to petitioner's transferor in 1922 was $296,400. From 1922 to 1943 deductions for depreciation attributable to the building on the property were taken and allowed at the rate of $3,000 per year, or a total of $63,000. Capital expenses were incurred

over the years in the amount of $1,541.90. The respondent contends that petitioner realized a capital gain in the amount of $146,058.10, upon the foreclosure sale computed as follows:

| | | |
|---|---|---|
| Mortgage in 1943 as reduced by principal payments—the amount respondent contends was "realized" | | $381,000.00 |
| Less adjusted basis: | | |
| Original cost in 1922 | $296,400.00 | |
| Improvements | 1,541.90 | |
| Depreciation | (63,000.00) | |
| | | 234,941.90 |
| Gain | | 146,058.10 |

Section 111 (a) of the Code provides that "the gain from the sale or other disposition of the property shall be the excess of the amount realized * * * over the adjusted basis * * *." The adjusted basis as provided in section 113 (b) is the unadjusted basis (here the original cost of $296,400) less depreciation allowed (but not less than the amount allowable), plus capital expenses. In the *Crane* [1] case it was held that on the sale of property, a mortgage debt was includible in the "amount realized" as "property" received.

The *Crane* case was followed by our decisions in *R. O'Dell & Sons Co.*, 8 T. C. 1165. affd. (CCA-3), 169 Fed. (2d) 247; and *Mendham Corporation*, 9 T. C. 320.[2]

Petitioner contends first that the taxable event was when the property was mortgaged in excess of cost by petitioner's transferor and that the result should thus be an increased basis for the property in petitioner's hands. This view was repudiated in our earlier case, *Lutz & Schramm Co.*, 1 T. C. 682. There the taxpayer transferred the

[1] *Crane* v. *Commissioner*, 331 U. S. 1. The taxpayer inherited mortgaged business property valued for Federal estate tax purposes at an amount equal to a mortgage on which the taxpayer was not personally liable. The taxpayer operated the property for a number of years and claimed and was allowed annual depreciation deductions on the building. When the interest on the mortgage became substantially in arrears the taxpayer, under threat of foreclosure, sold the property subject to the mortgage for a proportionately small sum and reported gain in the amount of a net cash proceeds received from the sale. It was held that the unadjusted basis under section 113 was the proper basis for depreciation and had to be reduced by allowable depreciation to arrive at the adjusted basis and that the taxpayer's gain should be determined by subtracting the adjusted basis from the amount received on the sale *plus* the amount of the mortgage.

[2] In the *O'Dell* case foreclosure and sale of petitioner's mortgaged property cancelled its mortgage indebtedness which was in excess of its adjusted cost basis. It was held that petitioner realized capital gain taxable to it in the year when the mortgagee's action for a deficiency judgment was barred by local law under which the foreclosure, sale and action for deficiency were to be regarded as one complete transaction.

In the *Mendham* case a foreclosure which eliminated a mortgage indebtedness greater than petitioner's basis (the same as the basis of petitioner's transferor since the property was acquired in a tax free exchange), was held to result in a taxable gain notwithstanding that the indebtedness had its inception in a borrowing by petitioner's transferor and that petitioner was not itself liable on the mortgage. The transaction was completed when the mortgage was discharged in exchange for a conveyance of the property the final disposition of which established as taxable gain the difference between the basis for the property and the amount acquired by the earlier borrowing.

property in 1937 to the mortgagee in satisfaction of the debt. It was argued that the taxable transaction did not take place in 1937; that the fair market value of the property at that time was only $97,000 as against the debt in the amount of $300,000; and that in 1934 the creditor had agreed to look only to the property covered by the mortgage for security. We said, however, that:

The fair market value of the property transferred is immaterial under the provisions of the revenue act in the computation of gain or loss from the disposition of the property. * * * There is no question of the fact that the petitioner had received and used for its own benefit the $300,000 and the only repayment it made on this part of the debt was the transfer of the property. The debt was finally satisfied by that transfer. The petitioner's release from personal liability in 1934 was not a taxable transaction * * *. The fact remains that the taxable transaction took place in 1937, and the net result of it was that the petitioner, over a period of years, had enjoyed the full benefit from the receipt of $300,000 by transferring a property which had a basis in its hands for gain or loss of only $257,435.42. * * *

Here, as in *Lutz & Schramm Co.*, there can be no question "that the petitioner [or its predecessors] had received and used for its own benefit" at least the amount of gain now being taxed.

Petitioner has introduced evidence and requested a finding of fact to the effect that the fair market value of the property at the time of foreclosure of the mortgage in 1943 was not more than $320,000. as against a debt of $381,000. Under the view of *Lutz & Schramm Co.*, *supra*, this value is immaterial and we have, therefore, disregarded the requested finding of fact. Petitioner's attempts to distinguish *Lutz & Schramm Co.* are without merit as are its other arguments on this point to the effect that mortgaging without personal liability is a sale of but a lien, security for which is recourse only to the property, with the result that no debt is created. Petitioner finds itself traveling in two ways at once on this argument, for later in its brief it states that:

* * * A debt payable only out of certain property is just as surely a debt as one payable in legal currency. * * *

This statement was made in connection with the argument that:

* * * Since his debt is limited to the value of the property, the property owner cannot be deemed to receive, by way of consideration for his property, debt discharge in a greater amount than the value of the property.* * *

In any event, petitioner's argument that a mortgage without personal liability is but a lien was refuted by the Circuit Court in *Commissioner* v. *Crane*, 153 Fed. (2d) 504:

* * * The mortgagee is a creditor, and in effect nothing more than a preferred creditor, even though the mortgagor is not liable for the debt. He is not the less a creditor because he has recourse only to the land, * * *

Petitioner next contends in the alternative that the amount (if any) "realized" on the foreclosure cannot exceed the fair market value of the

property and relies principally on the following footnote 37 to the Supreme Court's opinion in the *Crane* case:

> Obviously, if the value of the property is less than the amount of the mortgage, a mortgagor who is not personally liable cannot realize a benefit equal to the mortgage. Consequently, a different problem might be encountered where a mortgagor abandoned the property or transferred it subject to the mortgage without receiving boot. That is not this case.

It is apparent from the quoted footnote and the context of the opinion that the Court intended to reserve its views on the situation where, as here, there was no boot in the transfer and the mortgage was foreclosed. We have already dealt with this aspect of the petitioner's argument in our discussion of *Lutz & Schramm Co.*, *supra*. We are not persuaded that the language from the *Crane* case quoted above is authority for changing our views. If the footnote from the *Crane* case rises above the status of dictum, we are unable to conclude that it is of any application, at least in circumstances such as those here presented where the entire rationale must be dependent upon the concept of basis and "realized" gain on foreclosure. Petitioner cannot elude the impact of the fact that it realized an economic gain of $146,058.10 when the mortgage was foreclosed. None of this amount was taxable prior to the foreclosure of the mortgage in 1943. That event was the first "disposition" of the property within the meaning of section 111 (a).

The situation presented in *Hirsch* v. *Commissioner*, 115 Fed. (2d) 656, is not presented here. In that case there was a compromise of the amount of the mortgage as between the parties thereto when it became apparent that the value of the property had declined. It was said that there was "nothing of exchangeable value" received. In the present case, however, petitioner borrowed "new money" on the property greatly in excess of the amount respondent seeks now to tax as gain.

It cannot be seriously argued that the various mortgagees were making gifts to the petitioner or its predecessor. The indebtedness was at all times a loan and the fluctuation of market value of the property so mortgaged does not change the nature of the security. Nor does a change in the market value affect the amount of the indebtedness outstanding and eliminated at the time of foreclosure. The amount thus became, at that time, a "realized" gain. Petitioner's premise that the amount of the debt secured by the foreclosed mortgage is limited to the market value of the property, is untenable.

Petitioner's third point is that it should not be charged on foreclosure with a gain that accrued to its predecessor. Petitioner states:

> * * * The rule in [the *Mendham* case, *supra*], were it to stand, would be dispositive of the present case on the question of whether a predecessor's economic benefit may be attributed to the successor; * * *

Petitioner invites us to "reconsider" the *Mendham* case, but its arguments are not persuasive, and we adhere to that decision.

We hold that the respondent did not err in his manner of computation of gain resulting to the petitioner on the foreclosure of the property.

Reviewed by the Court.

*Decision will be entered under Rule 50.*