**HARSH INVESTMENT CORP., an Oregon corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 69–154.

United States District Court, D. Oregon.

Sept. 28, 1970.

---

8. Cf. United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967).

9. See note 2, *supra.*

Denton G. Burdick, Jr., Hutchinson, Schwab & Burdick, Portland Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Portland Or., John M. Kirk, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

ALFRED T. GOODWIN, District Judge:

Plaintiff paid $77,256.72 of its 1961 and 1962 income tax under protest, and sues for a refund.

At issue is the taxpayer's right to defer recognition of a gain, under Section 1033 of the Internal Revenue Code of 1954.

Plaintiff, an Oregon corporation, operates in California through a wholly owned subsidiary, Harsh California Corporation. In 1953 Harsh California obtained a $2,474,600 loan, insured by the Federal Housing Administration, and with the proceeds constructed a housing project on land leased from the federal government pursuant to the Wherry Act, 12 U.S.C. §§ 1748–1748i, 63 Stat. 570 (1949).

In 1955, Congress enacted Public Law 84–345, 69 Stat. 635, 42 U.S.C. § 1594a, authorizing the Department of Defense to acquire Wherry Act housing projects. In 1964, the Department of the Navy acquired, under threat of condemnation, the housing project owned by Harsh California. Harsh California received $455,000 in cash and the Secretary of the Navy assumed all liability on the note and the mortgage. (The unpaid balance was $2,010,000.)

On February 28, 1965, Harsh California purchased all of the outstanding common stock of King Tower, Inc. King Tower's principal asset was an apartment house in Portland, Oregon. Harsh California paid $135,294.31 in cash and gave a 30-year note for the $900,000.00 balance of the purchase price of the stock. The King Tower apartment house was encumbered by a mortgage having an unpaid balance of $1,289,579.-62 at the time Harsh California acquired the King Tower stock.

Plaintiff's consolidated tax return for the fiscal year ending March 31, 1965,

reported the financial transactions of Harsh California. The sale of the California housing project was properly reported as an involuntary conversion under. Int.Rev.Code of 1954, § 1033. Plaintiff then attempted to defer recognition of the taxable gain, on the ground that the "amount realized" had been used to acquire property similar and related in service to the California housing project.

The Commissioner took the position that the reinvestment requirements of Section 1033 had not been satisfied. The parties agree that plaintiff had realized a long-term capital gain of $781,585.28 on the sale of the California housing project. (The $781,585.28 represents the cash received by Harsh California plus the outstanding balance of the mortgage assumed by the Navy, less Harsh California's basis in the property and the expenses of sale.)

The parties have agreed that the only issue to be resolved here is whether or not the dollar amount of the mortgage assumed by the Secretary of the Navy is to be included in "the amount realized" by taxpayer on the forced sale. If the mortgage balance is included in the amount realized, then Harsh California did not satisfy the reinvestment demands of Section 1033.

■ To qualify for Section 1033 deferment, the full amount realized must be invested by taxpayer in other property similar or related in service to the property sold. (The acquisition of control of a corporation owning such other property would also qualify in a proper case.) Upon such reinvestment, certain taxable consequences can be deferred under 26 U.S.C. § 1033(a) (3)(A). The $1,035,294.31 paid for King Tower stock, however, was less than half the amount realized in the California sale, if the term "amount realized" includes the Navy's assumption of the construction loan.

Plaintiff urges that Commissioner of Internal Revenue v. Babcock, 259 F.2d 689 (9th Cir. 1958), holds that only the reinvestment of cash or its equivalent received for the seller's equity in a forced sale is necessary to qualify the acquisition of new property for Section 1033 deferment. The government says that Commissioner of Internal Revenue v. Fortee Properties, 211 F.2d 915 (2d Cir. 1954), directs the opposite result. It is unnecessary to attempt to harmonize these apparently conflicting decisions, because the facts of both are distinguishable from the facts here.

*Babcock* affirmed a Tax Court decision which had construed Int.Rev.Code of 1939, § 112(f), prior to its amendment in 1951. The former section spoke of the conversion of property into "money," which was then to be reinvested in like property. *Babcock* turned on the fact that the taxpayer, under California law, was not personally liable on a purchase-money mortgage and could walk away from the mortgaged property at any time without liability to the mortgagee for any deficiency. Therefore, the court reasoned, if the forced-sale taxpayer reinvested the cash received for his equity, he was in effect reinvesting everything which he "realized" under the existing law. The *Babcock* court thought the forced sale distinguished the case from the voluntary-sale cases which earlier had reached the opposite result.

■ In the case at bar, Harsh California had given its note and mortgage to secure a corporate debt for a construction loan. Whether or not California law would treat a construction loan the same as a purchase-money mortgage for the purposes of personal liability in the event of a deficiency on foreclosure, Harsh California for tax purposes had treated the construction loan as a corporate debt. As a part of its basis in the property, the loan each year gave Harsh California a substantial deduction for depreciation on the total cost of the project. If basis is to have any meaning in these cases, the entire basis ought to be considered, both for depreciation purposes and for defining the amount realized on sale. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301

(1947); Likins-Foster Honolulu Corp. v. Commissioner of Internal Revenue, 417 F.2d 285, 289 (10th Cir. 1969).

 In *Crane*, the court held that the "amount realized" on a voluntary sale of property for cash, subject to an existing mortgage, is the amount of cash received plus the amount of the mortgage. Nothing in the 1954 amendments to the Internal Revenue Act detracts from the force of *Crane*, and an argument can be made, if necessary, that the 1954 amendments strengthen the position of the Commissioner. I believe that the fact that a given sale is made under threat of condemnation should not be controlling in defining amount realized. If Congress had so intended, it would have said so.

If "property" were now to be defined as the "equity" only, the result on the allowance of deductions for depreciation and on the collateral adjustments of basis would be bizarre. Crane v. Commissioner of Internal Revenue, 331 U.S. at 9, 67 S.Ct. 1047. I am aware that my view of the *Crane* decision may be more favorable to the government than a reading of the *Babcock* case would warrant within this circuit, but I do not believe the *Babcock* rule should be extended beyond the facts of that particular case. See Smith v. Commissioner of Internal Revenue, 324 F.2d 725 (9th Cir. 1963).

Plaintiff argues that if the mortgage assumed in the sale of the California property is to be included in the amount realized by Harsh California, then, to be fair, the Commissioner should have allowed the mortgage against the King Tower Apartment house to be considered in calculating the amount Harsh California reinvested in Section 1033 property. This argument overlooks the fact that Harsh California did not reinvest the full amount realized from the forced sale even if Harsh California could pierce through the corporate stock which it purchased so as to treat a mortgage on the underlying real property owned by the corporation as a part of the reinvestment. Further, Harsh California has not proved that it assumed that mortgage. Accordingly, this argument must be rejected.

Plaintiff also seeks comfort from condemnation cases involving "Wherry Act" property. These cases do not help the plaintiff. They were concerned, not with the taxable consequences of the taking, but with the determination of the fair cash value of the owner's equity.

There is no ground for a refund under Section 1033.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). The parties have stipulated that the form of judgment will be computed in accordance with the conclusions of law contained in this opinion and in the opinion of Judge Belloni dated January 9, 1970. If the parties are unable to agree on or before November 2, 1970, the plaintiff will present a form of judgment and the court will hear the defendant's objections thereto on the law and motion calendar on a date to be designated by the Clerk of the Court.